CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

SEP 28 2009

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:08-CR-00053 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | By: Hon. Glen E. Conrad |
| TODD MASON CLARK | ) | United States District Judge |

This case is before the court on the government's motion to reconsider the court's order sentencing the defendant to 87 months of imprisonment. Specifically, the government challenges the court's application of the statutory "safety valve" established under 18 U.S.C. § 3553(f). For the reasons set out in this opinion, the government's request for relief shall be denied.

On August 24, 2009, this court conducted a hearing for the purpose of sentencing the defendant on one count of conspiracy to distribute methamphetamine. In that hearing, the court heard testimony from the defendant regarding his drug trafficking activities and firearms that were found in the same room as a quantity of methamphetamine. The defendant testified that, after he separated from his wife, he went to live at his uncle's house, who was a co-defendant in this case. He stated that, after moving in with his uncle, he began to experiment with drugs and eventually began to sell drugs to friends to support his own drug habit. At some point, the defendant met an undercover state trooper, to whom he began selling larger quantities of drugs. (Tr. at 7-11).

With regard to the firearms, the defendant testified that he acquired a concealed-weapon permit and both firearms legally when he turned twenty-one. (Tr. at 16-17). He stated that he usually drove someone else's car to the drug transactions and that he "never had a gun on [him] in any drug

transaction" because he "[j]ust didn't feel comfortable having guns and drugs on [him] at the same time." (Tr. at 12-14.) In response to his attorney's question about the policy concern that firearms "make people braver" and "more foolhardy," the defendant stated "[that] is not me at all." (Tr. at 20).

Under 18 U.S.C. § 3553(f)(2) and United States Sentencing Guideline § 5C1.2(a)(2), a defendant is only eligible for safety valve relief if the court finds that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). A defendant has the burden of proving that he qualifies for application of the "safety valve" provision. See United States v. Beltran-Ortiz, 91 F.3d 665, 669 (4th Cir. 1996).

Under the Guidelines, a two-level increase in a defendant's base offense level applies if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1).[1] The government need only prove by a preponderance of the evidence that the firearms enhancement is applicable. See United States v. Urrego-Linares, 879 F.2d 1234, 1238-39 (4th Cir. 1989).

Several circuits, noting the differing statutory language and the difference in evidentiary standards when applying the two provisions, have concluded that a sentence enhancement pursuant to § 2D1.1(b)(1) does not foreclose a sentence reduction pursuant to § 5C1.2(a)(2). See United States v. Delgado-Paz, 506 F.3d 652, 655 (8th Cir. 2007) (stating that "the specific offense characteristic and the safety-valve provision regarding weapons are not coextensive"); United States v. Bolka, 355 F.3d 909, 914 (6th Cir. 2004) (stating that the "application of a § 2D1.1(b)(1) sentence enhancement

---

[1] Comment Note 3 to § 2D1.1(b)(1) provides that the enhancement should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." The Fourth Circuit has held that "in order to prove that a weapon was present [for purposes of this enhancement], the Government need only show that the weapon was possessed during the relevant illegal drug activity." United States v. McAllister, 272 F.3d 228 (4th Cir. 2001).

2

does not necessarily preclude the application of a § 5C1.2(a) 'safety valve' reduction"); United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1188 (10th Cir. 2004) (same); United States v. Nelson, 222 F.3d 545, 551 (9th Cir. 2000) (stating that "the burden and quantum of proof under §§ 2D1.1 and 5C1.2 remain different").

After considering the evidence submitted at the hearing in the instant case, the court ruled that the government had met its burden in proving that a firearm was possessed for the purposes of the Guideline enhancement under § 2D1.1(b)(1). It was the opinion of the court, however, that the defendant met his burden in establishing that he did not possess a firearm in connection with the commission of the drug offense, and afforded the defendant benefit of the safety valve provision. (Tr. at 34).

In the hearing, the court relied on United States v. Blount, in which the United States Court of Appeals for the Fourth Circuit stated that the evidence must establish a close nexus between the firearm and the associated offense when considering the language of "in connection with." 337 F.3d 404, 411 (4th Cir. 2003). The Fourth Circuit held that, under its interpretation of "in connection with,"

> [A] weapon is used or possessed "in connection with" another offense if the weapon facilitates or has a tendency to facilitate the [other] offense. The firearm must have some purpose or effect with respect to the crime; its presence or involvement cannot be the result of accident or coincidence.

Id. (internal citations and quotation marks omitted).

In Blount, the Fourth Circuit addressed the applicability of a Guideline enhancement in a case where the defendant had admitted to stealing a revolver during the commission of a burglary.[2] The

---

[2] The Guideline enhancement at issue in that case provided for a four-level enhancement if "the defendant used or possessed any firearm or ammunition in connection with another felony offense. . . ." Blount, 337 F.3d at 406.

3

Court stated that the government could meet its burden of proving that the defendant possessed the stolen firearm in connection with the burglary if it showed, for example, "that the defendant actually used the stolen weapon to intimidate occupants of the home, or that he prepared for this contingency by keeping the firearm close at hand." Id. Because the government failed to meet this burden, however, the Court held that the defendant was ineligible for the guideline enhancement at issue in that case.

In this case, the government argues that the defendant was disqualified from receiving safety valve relief based on 18 U.S.C. § 3553(f)(2). Citing United States v. Shelton, the government argues that the defendant's possession of firearms was "in connection with" the offense because of their potential to facilitate the defendant's drug trafficking activity. See 318 Fed. Appx. 174 (4th Cir. Mar. 16, 2009) (unpublished) (nexus satisfied where gun and narcotics found in the same bag and where defendant admitted he purchased firearm for protection at the time he began counterfeiting money to purchase narcotics). The government underscores the fact that the defendant's firearms were located behind a pillow on the defendant's bed, in the same room that a distribution quantity of methamphetamine was found.

The court concludes that, for the reasons cited during the sentencing hearing, the determination that the defendant was eligible for safety valve treatment was accurate. The evidence indicated that, after separation from his wife, the defendant was living at his uncle's house, where he kept two legally owned firearms which he had purchased years prior to commencing his drug trafficking activities. (Tr. 15, 17). The defendant testified that he had hunted since he was a child and that, when he turned twenty-one, he applied for and received a concealed-weapon permit. (Tr. at 16-17). More importantly, the defendant testified that he felt uncomfortable having drugs and firearms

4

together during drug transactions, which he did not conduct at his home, and that having firearms did not make him any "braver" or more "foolhardy." The government offered no evidence to the contrary. In light of the Fourth Circuit's characterization of the evidence necessary to establish that a firearm is possessed "in connection with" another offense, it remains the determination of this court that the mere presence of the defendants' firearms and methamphetamine in the same room, especially in light of other evidence, was insufficient to show that the firearms were "in connection with" the defendant's drug trafficking activities for purposes of the safety valve provisions of 18 U.S.C. § 3553(f). Unlike the situation in Shelton, there was no evidence that the weapons in this case had any purpose or effect with respect to defendant's drug offense. The defendant met his burden in establishing that he was entitled to relief under the safety valve provision.

For the foregoing reasons, the government's request for relief shall be denied.

The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER: This 28th day of September, 2009.

_____
United States District Judge